Laurie Haynie, Utah Bar # 4486
**HUSCH BLACKWELL LLP**
6349 South Secluded Oak Circle
Salt Lake City, UT 84121
Telephone:  (847) 477-2266
Laurie.Haynie@huschblackwell.com
*Attorney for Defendants Express Scripts,*
*Inc., ESI Mail Pharmacy Service, Inc., and*
*Express Scripts Pharmacy, Inc.*

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| THE STATE OF UTAH; UTAH DIVISION OF CONSUMER PROTECTION,<br><br>*Plaintiffs,*<br><br>v.<br><br>ELI LILLY AND COMPANY, ET AL.,<br><br>*Defendants.* | **NOTICE OF REMOVAL**<br><br>Civil No. _24-cv-27_<br><br>Removed from Case No. 230908750, Third Judicial District Court |

In accordance with 28 U.S.C. §§ 1442(a) and 1446, Defendants Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc. (collectively, "Express Scripts") hereby remove *The State of Utah, et al. v. Eli Lilly and Company, et al.*, Case No. 230908750, from the Third Judicial District Court to the United States District Court for the District of Utah. A true and correct copy of the operative pleading is attached hereto as **Exhibit A** and cited herein as "Compl."

## INTRODUCTION

1.    Express Scripts is a significant contractor with the federal government.  Express Scripts, Inc. ("ESI") currently contracts with the United States Department of Defense ("DoD") to provide services to members of the DoD's TRICARE health care program across the country, including in Utah.  Attached as **Exhibit B** is a true and correct copy of the public contract between the Department of Defense and Express Scripts, Inc., Contract No. HT-9402-14-D-0002 (the "TRICARE Contract"), with certain redactions consistent with the Freedom of Information Act.

2.    Under the TRICARE Contract, ESI and its affiliates provide pharmacy benefit management services for the DoD, including active-duty service members, veteran retirees, and their families.  As of 2017, over 134,000 veterans reside in Utah.[1]  Many of those veterans depend on TRICARE for their prescription drugs, including insulin.

3.    As subcontractors to Express Scripts, Inc., Defendants Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Services, Inc. administer the mail order pharmacy portions of the contract.  Under the agreement, Express Scripts is directed to charge TRICARE beneficiaries only such copayments as are dictated by the DoD, and to dispense medications purchased by the DoD at rates negotiated directly between the federal government and drug manufacturers.  Express Scripts must comply with such dictates in Utah.

4.    In this action, the State of Utah and Utah Division of Consumer Protection (together, "Utah") allege that the prices paid by the citizens of Utah for certain insulin products

---

[1] *See, e.g.*, National Center for Veterans Analysis and Statistics, Utah State Summary, available at https://www.va.gov/vetdata/docs/SpecialReports/State_Summaries_Utah.pdf.  A true and correct copy is attached as **Exhibit C**.

are artificially inflated by a sprawling "Insulin Pricing Scheme" between certain Pharmacy Benefit Managers ("PBMs") and certain insulin manufacturers.

5.      Some of those Utah citizens allegedly injured by the scheme are TRICARE beneficiaries.  Certain TRICARE beneficiaries acquire insulin products through the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP") administered by Express Scripts under the TRICARE Contract.  The formulary used for TRICARE beneficiaries, the prices the federal government pays for the insulin products, and critically, the copayments Express Scripts must ensure beneficiaries pay, are all dictated by federal law and the TRICARE Contract.

6.      Utah alleges that the Insulin Pricing Scheme injured its residents directly because they pay higher "out-of-pocket" costs as a result of the scheme.  *See* Compl. ¶¶ 28, 30, 272, 290–92, 457, 459, 466.

7.      Utah alleges that each purchase of the at-issue medications by a Utah diabetic constitutes a separate violation of the Utah Consumer Sales Practices Act ("UCSPA").  Compl. ¶ 508.

8.      The State also asserts that "Utah diabetics" suffered "ascertainable losses and damages" (Compl. ¶ 520), and that the State seeks "disgorgement," and/or "restitution" on behalf of those residents (*id.* ¶ 510).  In its prayer for relief, Utah seeks monetary relief in the form of civil penalties, payment of "all consumer damages and/or restitution", disgorgement, punitive damages, pre- and post-judgment interest, and its costs and fees.  *See* Compl. at pp. 109–110.

9.      Utah thus seeks the return of out-of-pocket costs any Utah resident has paid for insulin on top of civil penalties for each purchase of the at-issue drugs in Utah.  TRICARE beneficiaries who receive insulin through the mail-order pharmacies administered by Express

Scripts and TRICARE beneficiaries who paid copays fixed by the federal government and implemented by Express Scripts at retail network pharmacy locations are among the individuals who paid those out-of-pocket costs for the at-issue drugs.

10.     Under the TRICARE Contract, Express Scripts had no choice but to ensure the charging of the copayments from TRICARE beneficiaries that Utah now seeks as disgorgement, restitution, recission and for which Utah also seeks civil penalties.

11.     Accordingly, and as more fully explained below, Express Scripts has government contractor immunity and preemption defenses to Utah's claims, permitting Express Scripts to remove the entire action under 28 U.S.C. § 1442(a)(1).

## BACKGROUND

12.     On November 16, 2023, the State of Utah and Utah Division of Consumer Protection filed a Complaint in the Third Judicial District Court.

13.     Express Scripts has not yet been served with process.

14.     The State brings its action against two categories of defendants: "Manufacturer Defendants" and "PBM Defendants."

- The State alleges that the "Manufacturer Defendants" are Eli Lilly and Company, Sanofi-Aventis U.S. LLC, and Novo Nordisk Inc.

- The State alleges that the "PBM Defendants" are CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, LLC, Caremark, LLC, CaremarkPCS Health, LLC, UnitedHealth Group, Inc., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., OptumRx, Inc., and OptumInsight, Inc.

15.    Utah alleges an "Insulin Pricing Scheme" between the Manufacturer Defendants and the PBM Defendants to artificially inflate the price of insulin and other diabetes medications. *See* Compl. ¶¶ 334–54.

16.    Utah asserts three causes of action against Express Scripts: (i) violations of the Utah Consumer Sales Practices Act (Compl. ¶¶ 497–511), (ii) unjust enrichment (*id.* ¶¶ 512–520), and (iii) civil conspiracy (*id.* ¶¶ 521–524).

## VENUE

17.    Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district embracing the Third Judicial District Court, the court from which removal is sought.  *See* 28 U.S.C. § 98(b).

## GROUNDS FOR FEDERAL-OFFICER REMOVAL

18.    The federal-officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

19.    The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969)).  Rather, the federal officer removal statute "should be interpreted broadly to fully protect the important governmental interests involved." *Becenti v. Vigil*, 902 F.2d 777, 779–780 (10th Cir. 1990).

20.    In the Tenth Circuit, a party removing under the federal-officer-removal statute must show that "(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal

defense to the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022) (citing 28 U.S.C. § 1442(a)(1)). Express Scripts satisfies all three elements here.

### A.    Express Scripts Is a "Person" Within the Statute's Meaning.

21.    Express Scripts is a "person" under the federal-officer removal statute because the "person" contemplated by the federal officer removal statute includes corporations. *Suncor Energy*, 25 F.4th at 1251.

### B.    A Causal Nexus Exists Between Express Scripts' Actions Under a Federal Officer and Utah's Claims.

22.    To demonstrate a causal nexus between a removing defendant's actions directed by a federal officer and a plaintiff's claims, a removing defendant must show (1) that the defendant was "acting under" a federal officer and (2) that such action is "causally connected" with the plaintiff's claims against it. *Suncor Energy*, 25 F.4th at 1251.

23.    Express Scripts satisfies both elements in this action.

### 1.   Express Scripts Acted Under a Federal Officer.

24.    Congress authorizes removal of actions not just by officers of the United States but also "any person acting under that officer." 28 U.S.C. § 1442(a)(1).

25.    The words "acting under" "describes a relationship between private entity and federal superior typically involving 'subjection, guidance, or control.'" *Suncor Energy*, 25 F.4th at 1251 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)). Private entities are "acting under" a federal officer when involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 143.

26.     The DoD is required by law to enter into contracts for the provision of healthcare services to TRICARE members.  *See* 10 U.S.C. § 1073a. Congress also has required the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE.  10 U.S.C. § 1074g.

27.     The DoD entered into such a contract with Express Scripts to directly and through its affiliates provide pharmacy benefits to members of the DOD's TRICARE health care program across the country, including in Utah. *See* Ex. B.  Express Scripts, in turn, provides those benefits under the TRICARE Contract for TRICARE beneficiaries in Utah.

28.     Express Scripts provides PBM services and administers TMOP, the DoD's mail-order pharmacy program, under the detailed requirements of the contract and lengthy Statement of Work with the DOD. The Statement of Work is "Section C" of the contract and is available on pages 63–121 of Exhibit B.

29.     The DoD dictates nearly every single aspect of Express Scripts' responsibilities in supporting TRICARE.  The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products."  Ex. B at § C.1.4.  The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee."  *Id.*  When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves as only a "fiscal intermediary *on behalf of DoD* to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries at retail pharmacies." *Id.* at § C.1.6 (emphasis added).  Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies.  *Id.*

30.     These requirements are all mandated by Congress.  10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee").  Congress not only requires cost-sharing that favors generics, but it spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

31.     Express Scripts supports TRICARE's pharmacy benefit program under the careful direction of the DoD.  When it causes any copayment to be charged to any TRICARE beneficiary for any product, including the insulin products at issue in this action, it does so in the manner and according to the directions carefully prescribed by the DoD.  Ex. B at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure").

32.     For TMOP, Express Scripts must collect copayments from beneficiaries in accordance with the specific cost-sharing matrix set forth in the TRICARE Reimbursement

Manual ("TRM").[2]  *Id.* at § C.8.2 ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B.  The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP").  Express Scripts has a similar obligation to "ensur[e] that the appropriate copayment is collected at retail network pharmacies." *Id.*

33.    In short, as the Fourth Circuit put it, Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program."  *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253–54 (4th Cir. 2021).

34.    Express Scripts performs the day-to-day administration in Utah pursuant to a lengthy and detailed contract from which Express Scripts lacks the discretion to depart.  Express Scripts is thus "acting under" a federal officer when carrying out the TRICARE pharmacy program.

### 2. A Causal Nexus Exists Between Utah's Challenged Acts and Express Scripts' Contractual Obligations.

35.    To show a nexus or connection between the conduct and official authority, a defendant need only show that the conduct "relate[s] to" the asserted authority.  28 U.S.C. § 1442(a)(1).  In other words, there need only be "a connection or association" with the alleged conduct.  *Suncor Energy*, 25 F.4th at 1251.

---

[2]    The matrix included in the TRICARE Reimbursement Manual is available at https://manuals.health.mil/pages/DisplayManualHtmlFile/2021-09-03/AsOf/TR15/C2ADB.html. A true and correct copy of the matrix is attached hereto as **Exhibit D.**

36.    Utah alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs.    *See* Compl. ¶¶ 28, 30, 272, 290–92, 457, 459, 466. Specifically, Utah alleges that as a result of the alleged scheme, "diabetics have been overcharged millions of dollars a year in out-of-pocket costs[.]"  *Id.* ¶¶ 30, 291.  Utah seeks to recover those out-of-pocket costs by seeking "disgorgement," "restitution" and/or "recission" on behalf of those residents.  *Id.* ¶ 518.

37.    Utah also seeks the payment of a civil penalty for each purchase of the at-issue drugs in Utah.  Compl. ¶ 508 ("Each purchase Utah diabetics made for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of the UCSPA"); *id.* at p. 127 (praying for imposition of civil penalties for each violation of UCSPA).

38.    As explained above, for those Utah residents receiving insulin through TRICARE—either from retail pharmacies or through the TMOP—the out-of-pocket costs those residents must pay, and that Express Scripts ensures is collected, are dictated by federal law and Express Scripts' direction from the DoD.

39.    Express Scripts' conduct of ensuring the collection of copayments from TRICARE beneficiaries according to the schedules mandated by the federal government is, at a minimum, associated with Utah's allegations that Express Scripts' conduct causes diabetic Utah citizens to have higher out-of-pocket costs.

### C.    Express Scripts Has Colorable Federal Defenses.

40.    For federal-officer removal purposes, a defense only needs to be colorable. *Jefferson Cnty.*, 527 U.S. at 431.  "Colorable" is a low bar. A colorable defense is "merely an arguable defense and a court need not determine at the removal stage whether that defense will

succeed at trial." *Brunson v. Adams*, 2021 WL 5403892, at *3 (D. Utah Oct. 19, 2021); *see also*

*Vandeventer v. Guimond*, 494 F. Supp. 2d 1255, 1267 (D. Kan. 2007) ( a colorable defense does

not require a defendant to "win his case before he can have it removed.")

    41.    Here, Express Scripts can raise a colorable government-contractor immunity

defense and a colorable preemption-based defense.

    42.    Under a traditional tort liability formulation, the federal government contractor

defense applies when (1) the United States approved reasonably precise specifications; (2) the

equipment conformed to those specifications; and (3) the supplier warned the United States about

the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).  Notwithstanding the origins of the

defense, "it is at least plausible that the government contractor defense could apply outside the

military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see*

*also Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1235 (8th Cir. 2012); *abrogated on other*

*grounds by BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1543 (2021)

("Neither does our lack of precedent regarding the availability of the *Boyle* defense to non-military

service contractors defeat the plausibility of the defense.") (citing *Bennett*, 607 F.3d at 1089).

Regardless of the context, the defense "applies if a contractor's obligations to the government

conflict with state law such that the contractor may not comply with both." *Arlington*, 996 F.3d at

255.

    43.    Utah alleges that UCSPA compels Express Scripts to have charged prices and

assessed copays to Utah residents—necessarily including TRICARE beneficiaries—lower than it

allegedly charged them pursuant to the directives of federal law and the terms of the DoD contract.

11

*See* Compl. ¶ 500 ("By engaging in the Insulin Pricing Scheme, as described herein, Defendants have committed trade practices in connection with a consumer transaction within Utah as prohibited by the broad provisions of the UCSPA"), ¶ 508 ("Each purchase Utah diabetics made for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of the UCSPA"). Based on Utah's allegations, Express Scripts cannot simultaneously comply with its obligations under the TRICARE Contract and contrary Utah law, making a federal contractor immunity defense colorable.

44.     Utah seeks restitution, disgorgement, and civil penalties based on the money spent by diabetics in Utah purchasing the at-issue drugs. *See* Compl. ¶ 510 (alleging that for UCSPA violations, "Defendants are directly and jointly and severally liable for all equitable relief, restitution, damages, punitive damages, penalties and disgorgement for which recovery is sought herein, well in excess of $300,000"). But for those citizens who are TRICARE beneficiaries in Utah, Express Scripts had no choice but to cause the charging of the specific copayments required by the TRICARE Contract. *See* Ex. B. at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure"); *id.* at § C.8.2. ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"); *see also* 10 U.S.C. § 1074g(a)(6)(A).

45.     Utah also seeks an injunction that could require Express Scripts to stop charging the copayments required under the TRICARE Contract. Specifically, Utah seeks a permanent injunction "prohibiting Defendants from engaging in any violations of the Utah Consumer Sales Practices Act." Compl. at p. 109. Utah contends that the allegedly inflated "out-of-pocket"

payments from Utah citizens, including those relying on the TMOP, are a violation of UCSPA. *See*, *e.g.*, Compl. ¶ 501 (explaining violations caused "Utah diabetics [to] continue to purchase diabetes medications at Defendants' prices"); ¶ 508 ("Each purchase Utah diabetics made for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of the UCSPA.") Utah therefore seeks an injunction that, if granted, would purport to prohibit Express Scripts from collecting the copayments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Utah law and Express Scripts' obligations under the TRICARE Contract.

46. In addition to government-contractor immunity, Express Scripts can raise the defense of preemption based on the federal TRICARE statute, which provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g. The statute and accompanying federal regulations contain express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7).

47. The same conflict between Utah law and Express Scripts' obligations under the TRICARE Contract described above that provides Express Scripts a colorable government contractor defense also permits Express Scripts to raise a preemption defense.

**SUPPLEMENTAL JURISDICTION**

48.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other

claims in this action because they form part of the same case or controversy under Article III of

the United States Constitution.

**ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.**

**A.  The Notice of Removal Is Timely.**

49.      This Notice of Removal is timely because it is filed within 30 days of service of

the Complaint on Express Scripts. 28 U.S.C. § 1446(b)(3). Express Scripts removed the action

before it was served with process.

**B.  Consent is not Required.**

50.     The federal-officer-removal statute does not require other Defendants to consent to

removal.  *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034–35 (10th Cir. 1998).

**C.  Written Notice Of Removal.**

51.     In accordance with 28 U.S.C. § 1446(d), Express Scripts will give written notice of

the filing of this Notice of Removal to all adverse parties of record in this matter, and will file a

copy of this Notice with the clerk of the state court.

52.     Pursuant to Local Civil Rule 81-2(b), Defendants attach as separate attachments the

existing state court record.  In particular, (1) the operative complaint is attached hereto as **Exhibit**

**A**, (2) a copy of the state court docket sheet is attached hereto as **Exhibit E;** (3) no operative

scheduling order or notice of event due dates is attached because none was entered in the state

court, and (4) a single attachment containing all pleadings, motions, orders, and other relevant

filings (in this case a single other filing), consistent with DUCivR 5-2 and 5-3, is attached hereto

as **Exhibit F.** These exhibits attached to this Notice of Removal include copies of all process, pleadings, and orders served upon Express Scripts in compliance with 28 U.S.C. § 1446(a).

## **CONCLUSION**

WHEREFORE, Express Scripts removes this Action to this Court for further proceedings according to law.

Dated: January 11, 2024

*/s/ Laurie Haynie*
Laurie Haynie (Utah Bar # 4486)
**HUSCH BLACKWELL LLP**
6349 South Secluded Oak Circle
Salt Lake City, Utah 84121
Telephone: (847) 477-2266
laurie.haynie@huschblackwell.com

*Attorney for Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Laurie Haynie, hereby certify that on January 11, 2024, I caused a true and correct copy of the foregoing to be mailed via first class mail and a courtesy copy to be emailed to attorneys for Plaintiff at:

Douglas Crapo
Michael Gadd
Mark Holliday
Kevin McLean
Assistant Attorneys General
**UTAH OFFICE OF THE ATTORNEY GENERAL**
160 East 300 South, 5th Floor
Salt Lake City, Utah 84114
crapo@agutah.gov
mgadd@agutah.gov
mbholliday@agutah.gov
kmclean@agutah.gov

W. Lawrence Deas, Esquire
William Liston III, Esquire
**LISTON DEAS PLLC**
Post Office Box 14127
Jackson, Mississippi 39236
lawrence@listondeas.com
william@listondeas.com

Joanne Cicala, Esquire
Josh Wackerly, Esquire
R. Johan Conrod, Esquire
**THE CICALA LAW FIRM PLLC**
101 College Street
Dripping Springs, Texas 78620
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

Matthew C. McDonald, Esquire
**DAVID NUTT & ASSOCIATES**
605 Crescent Blvd., Suite 200
Ridgeland, Mississippi 39157
Mattm@davidnutt.com

Edwin S. Gault, Jr.
Tanya D. Ellis
Trey Watkins
**FORMAN WATKINS & KRUTZ LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201-2375
win.gault@formanwatkins.com
tanya.ellis@formanwatkins.com
trey@formanwatkins.com

*Attorneys for Plaintiff*

*/s/ Laurie Haynie*
Laurie Haynie